**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**AIKEN DIVISION**

| | |
|---|---|
| BULK PEPTIDE SUPPLY LLC,<br><br>PLAINTIFF**,**<br><br>vs<br><br>O2 MEDIA LLC, DAMIEN TAYLOR, HUNTER LOGAN GREGORY, DOE ENTITY, JOHN DOE 1 A/K/A "LUCAS BRAXTON" and DOES 2-10<br><br><br>DEFENDANTS. | Case No. 1:26-cv-1391-JFA<br><br>JURY DEMAND<br><br>VERIFIED COMPLAINT |

Plaintiff Bulk Peptide Supply LLC ("Plaintiff" or "Bulk Peptide Supply"), by and through its undersigned counsel, hereby brings this action against Defendants O2 Media LLC, Damien Taylor, Hunter Logan Gregory, Doe Entity, John Doe 1 a/k/a "Lucas Braxton" and Does 2-10 (collectively, "Defendants"), and alleges as follows:

**PRELIMINARY STATEMENT**

1.      This is an action for federal trademark infringement, false designation of origin, false advertising, and misrepresentation of source under the Lanham Act, 15 U.S.C. § 1125(a); violation of the South Carolina Unfair Trade Practices Act ("SCUTPA"), S.C. Code Ann. § 39-5-10 *et seq.*; and common law unfair competition against Defendants for perpetrating a fraudulent scheme to impersonate Plaintiff's business through the registration of domain names and creation of websites and social media accounts, which are highly similar or virtually identical to Plaintiff's trademark and websites in an effort to sell peptides to the public at large that are not meant for human consumption.

1

2.     Defendants—acting in concert—registered the domain name <bulkpeptidesglobal.com> (the "Infringing Domain") on December 18, 2025, incorporating the dominant elements of Plaintiff's BULK PEPTIDE SUPPLY Mark, and immediately launched a fully operational competing wholesale research peptide business through a website located at that domain (the "Infringing Website").

3.     Thereafter, Defendants registered <bulkpeptidessupply.store> on February 4, 2026 and launched a copycat website impersonating Plaintiff's business and a phishing scheme targeting Plaintiff's customers (the "Copycat Website"). After Web hosting company Hostinger disabled the Copycat Website in response to a DMCA notice, Defendants registered the domain name <bulkpeptide-supply.store> on March 25, 2026, and re-launched the Copycat Website. (<bulkpeptidessupply.store> and <bulkpeptides-supply.store> domain names are collectively referred to as the ".Store Domains.").

4.     Plaintiff seeks emergency injunctive relief, the disabling of the Infringing Domain and .Store Domains to its possession, disgorgement of profits, actual damages, enhanced damages, attorneys' fees, and all other relief the Court deems just and proper.

## THE PARTIES

5.     Plaintiff Bulk Peptide Supply LLC is an Oklahoma limited liability company with its principal place of business at 2304 W. Hefner Rd #21480 SMB#72181, The Village, Oklahoma 73120. Plaintiff sells research peptides and laboratory chemicals to labs, clinics, and medical professionals throughout the United States under the BULK PEPTIDE SUPPLY Mark through the website located at the domain <bulkpeptidesupply.com>.

6.      Defendant O2 Media LLC ("O2 Media") is, upon information and belief, a limited liability company organized and operating under the laws of South Carolina with its principal place of business in South Carolina. O2 Media offers digital marketing and web development services

7.      O2 Media developed the Infringing Website and registered the Infringing Domain through Squarespace Domains LLC. O2 Media's principal, Defendant Damien Taylor, previously served as Plaintiff's web developer, had intimate knowledge of Plaintiff's business, BULK PEPTIDE SUPPLY Mark, and had authorized access to Plaintiff's WooCommerce dashboard, website backend, customer attribution data, and marketing platforms.

8.      Defendant Hunter Logan Gregory is, upon information and belief, an individual living in Augusta, South Carolina, and a beneficial owner and operator of the Infringing Website and the competing business operating at <bulkpeptidesglobal.com>. Defendant Damien Taylor confirmed in writing that: Hunter Gregory is an owner of the competing business; Damien Taylor organized an LLC for Hunter Gregory; Hunter Gregory decided on the infringing name and had logos made; and Damien Taylor directed Hunter Gregory to Plaintiff's business and introduced him to Plaintiff's drop shipping program.

9.      Defendant Doe Entity is an unknown business entity organized by Defendant Damien Taylor on behalf of Defendant Hunter Gregory, which is, upon information and belief, the entity through which the Infringing Website is operated and through which the competing wholesale research peptide business is conducted. The precise relationship between Doe Entity and other parties, including any connection to the staging infrastructure associated with the Infringing Website, is a fact to be established through discovery. Plaintiff will amend this Complaint to substitute Doe Entity's true name and form upon ascertaining it through discovery or otherwise.

3

10.     Defendant John Doe 1 a/k/a "Lucas Braxton" ("Defendant Doe 1") is the listed registrant of the domain name <bulkpeptidessupply.store>, and is believed to be the listed registrant of <bulkpeptide-supply.store>. Plaintiff, nevertheless, has reason to believe that "Lucas Braxton" is a fictitious name meant to hide Defendant Doe 1's true identity. For example, the address associated with Defendant Doe 1 is 209 N. Springfield St., Newark, Illinois, 60541-9716 but the phone number associated with Doe 1 has a South Carolina area code. Plaintiff's investigation also indicated that no one by the name of "Lucas Braxton" has ever lived at said address. Plaintiff will amend this Complaint should it confirm during discovery Lucas Braxton's true identity.

11.     Defendants Does 2 through 10 are persons or entities whose identities are currently unknown to Plaintiff who participated in the wrongful acts alleged herein, including the registration of the domain name <bulkpeptide-supply.store>. Plaintiff will amend this Complaint to identify Does 1 through 10 when their identities become known.

12.     Defendant Damien Taylor is, upon information and belief, an individual residing in 1606 East Tavelle Lane, City Beech Island, South Carolina, and is the principal and owner of Defendant O2 Media. At all relevant times, Damien Taylor personally directed and controlled O2 Media's operations, personally served as Plaintiff's web developer, personally acquired intimate knowledge of Plaintiff's business and the BULK PEPTIDE SUPPLY Mark, and personally directed the registration of the Infringing Domain and .Store Domains, and the construction of the Infringing Website and the Copycat Websites, located at <www.bulkpeptidessupply.store> and <www.bulkpeptide-supply.store> (the "Copycat Websites") in cooperation with Hunter Gregory and Defendant Doe 1. Damien Taylor is liable individually for the wrongful acts alleged herein because he personally participated in and directed the infringing conduct.

4

**JURISDICTION AND VENUE**

13.     This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 and 1338(a), as this action arises under the Lanham Act, 15 U.S.C. §§ 1051 *et seq*.

14.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a), as those claims are so related to the federal claim as to form part of the same case or controversy.

15.     This Court has personal jurisdiction over Defendants O2 Media and Damien Taylor because O2 Media is a South Carolina entity and Damien Taylor is a South Carolina resident, both conducting business in and from this District.

16.     This Court has personal jurisdiction over Defendants Hunter Gregory and Doe Entity because, upon information and belief, Hunter Gregory is a South Carolina resident, and they directed and participated in the registration and operation of the Infringing Domain, the .Store Domains, and the competing and fraudulent businesses operated thereunder in this State, with knowledge that such conduct would cause harm to Plaintiff, and have purposefully availed themselves of the privilege of conducting business in or affecting this District through the operation of commercially active websites accessible to and targeting and defrauding consumers nationwide.

17.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this action occurred in this District. Defendant O2 Media registered the Infringing Domain and operated the Infringing and Copycat Websites from South Carolina. Damien Taylor registered the Infringing Domain and, upon information and belief,

the .Store Domains, all in concert with Hunter Gregory, while operating in South Carolina, and the tortious acts alleged herein were committed in whole or in part in South Carolina.

<strong><u>FACTUAL ALLEGATIONS</u></strong>

<strong>Plaintiff's Business and the BULK PEPTIDE SUPPLY Mark</strong>

18.    Plaintiff is the owner of the common law BULK PEPTIDE SUPPLY Mark, comprising both word elements and a distinctive logo design, which it has used continuously in commerce since at least August 2024 in connection with the sale of research peptides and laboratory chemicals. Through substantial investment, millions of dollars in sales, thousands of customer transactions, and significant marketing and search engine optimization ("SEO"), efforts, Plaintiff has established extensive goodwill and recognition in Plaintiff's Mark.

19.    Jenna Alexander ("Ms. Alexander") is the founder and owner of Plaintiff Bulk Peptide Supply LLC. Ms. Alexander founded Bulk Peptide Supply in June 2024 to sell research peptides and other laboratory chemicals to labs, clinics, and medical professionals across the United States.

20.    On June 14, 2024, Ms. Alexander created and registered the domain name <bulkpeptidesupply.com>, which has served as the primary website for the business continuously since that time.

21.    "Bulk Peptide Supply" was established as a trade name in June 2024, obtained an Employer Identification Number in August 2024, and was formalized into an Oklahoma limited liability company in February 2025.

22.    Since at least August 2024, Plaintiff has continuously used the BULK PEPTIDE SUPPLY Mark in interstate commerce in connection with the sale of research peptides and other laboratory chemicals.

6

23.     Plaintiff has invested tens of thousands of dollars in website development and digital marketing, including SEO, under Plaintiff's Mark. These efforts have resulted in top search engine rankings for relevant search terms and widespread brand awareness in the peptides market.

24.     Since at least August 2024, Plaintiff has generated millions of dollars in revenue and conducted thousands of customer transactions under the BULK PEPTIDE SUPPLY Mark. Through this extensive and exclusive use, the Mark has acquired substantial goodwill.

25.     Plaintiff has policed and enforced its rights in the BULK PEPTIDE SUPPLY Mark in the past and continues to do so. Plaintiff's exclusive and continuous use of Plaintiff's Mark has established it as a distinctive identifier of Plaintiff's goods in this market.

**B. Defendants' Knowledge of Plaintiff's Mark and Business**

26.     Defendant O2 Media and its principal, Defendant Damien Taylor, served as Plaintiff's trusted web developer from May 2025 until March 2026. Through that relationship, O2 Media and Damien Taylor acquired intimate, firsthand knowledge of Plaintiff's business, its BULK PEPTIDE SUPPLY Mark, its website architecture, its SEO strategy, its customer base, and its competitive position in the research peptide market.

27.     Mr. Taylor also had authorized access to Plaintiff's WooCommerce ecommerce dashboard, website backend, customer attribution data, and marketing platforms.

28.     Mr. Taylor developed the product images on Plaintiff's website for Plaintiff, and the file names for those images. The file names were akin to a code, which was known only to Mr. Taylor, Ms. Alexander, and Plaintiff.

29.     Through his access to WooCommerce, Mr. Taylor had the ability to hide product pages *on WooCommerce*, which would have the effect of hiding those pages on the public facing

website. There was no reason Damien Taylor would ever have to hide those pages in the course of his duties as a web developer once they were launched, unless requested by Plaintiff.

## C. Defendants' Registration and Use of the Infringing Domain

30.     On December 18, 2025, Defendant Damien Taylor, acting through and on behalf of O2 Media and in concert with Hunter Gregory, registered the Infringing Domain through Squarespace Domains LLC.

31.     Defendants promptly launched a fully operational competing wholesale research peptide business at the Infringing Domain, operating under the name "Bulk Peptides Global," with the tagline "Bulk Peptide Manufacturing for Serious Research." The Infringing Website lists info@bulkpeptidesglobal.com as a contact and offers for sale the same category of products as Plaintiff — wholesale research peptides and laboratory chemicals.

32.     The Infringing Website uses a color scheme—white background with blue writing—that is confusingly similar to Plaintiff's website at BulkPeptideSupply.com. The product packaging depicted on the Infringing Website—clear bottles with blue caps—is the same as or confusingly similar to Plaintiff's product packaging.

33.     Defendants registered and are using the Infringing Domain with full, actual knowledge of Plaintiff's Mark. Defendants O2 Media and Damien Taylor knew about Plaintiff's Mark from their prior role as Plaintiff's web developer, with intimate knowledge of Plaintiff's business, its competitive position, and its customer base. Hunter Gregory knew of Plaintiff's Mark because Damien Taylor personally introduced him to Plaintiff's business, before building the Infringing Website. Each Defendant's knowledge of Plaintiff's Mark at the time of registration of the Infringing Domain and .Store Domains is independently established, and, taken together, reflects a coordinated scheme carried out with full awareness of Plaintiff's rights.

34.    Indeed, in a written communication to Plaintiff following discovery of the Infringing Website, Mr. Taylor made the following admissions: (a) he built the Infringing Website, allegedly at the direction of Defendant Hunter Gregory; (b) he organized an LLC for Hunter Gregory in connection with the competing business; (c) Hunter Gregory allegedly paid Damien Taylor to build the site; (d) Damien Taylor had allegedly directed Hunter Gregory to buy peptides from Plaintiff; (e) Damien Taylor advertised the Infringing Website on Trafficjunky; and (f) he volunteered that, "[i]t looks horrible and I'm embarrassed about how I've handled the situation."

35.    Mr. Taylor also solicited Plaintiff's UK business partner to buy products from Mr. Gregory, claiming that Plaintiff was "screwing her over," despite not knowing the specifics of their business relationship.

36.    The Infringing Website also contains a fraudulent Trust Pilot graphic, claiming a 4.9 star rating on 374 reviews. Yet, there is no link to any reviews from the Trust Pilot graphic, and not a single review of the Infringing Website can be found on Trust Pilot. Nor does a search on Trust Pilot for "Bulk Peptides Global" return any results.

37.    As a direct and proximate result of Defendants' conduct in connection with the Infringing Domain, customers are likely to be confused as to the source, sponsorship, or affiliation of the Infringing Website. Such confusion is causing irreparable injury to Plaintiff. In addition, Plaintiff has suffered and continues to suffer loss of customers, lost revenue, and loss of goodwill.

### D. The .Store Domains and Impersonation Scheme

38.    Defendant Doe 1, under the fictitious name Lucas Braxton, registered the domain <bulkpeptidessupply.store> on February 4, 2026, through the domain name registrar, Hostinger. All registrant details were redacted. The domain differs from Plaintiff's domain

<bulkpeptidesupply.com> only by the addition of an "s" after "peptide" and the substitution of the ".store" gTLD for ".com."

39.     The <bulkpeptidessupply.store> Website became active on or around February 17, 2026, the same date on which product images were uploaded to the Infringing Website. The fraudulent website located at <bulkpeptidessupply.store> ceased to exist on or around March 27, 2026, following a DMCA takedown notice submitted by Plaintiff to Hostinger.

40.     On March 25, 2026, the domain name <bulkpeptide-supply.store> was registered through the domain name registrar, Hostinger, with all registrant details redacted for privacy. The domain differs from Plaintiff's domain <bulkpeptidesupply.com> only by the addition of a dash between the words "peptide" and "supply" and the substitution of the ".store" gTLD for ".com."

41.     The Copycat Websites are a deliberate, full impersonation of Plaintiff's business. They use Plaintiff's exact BULK PEPTIDE SUPPLY Mark, branding, and product imagery— materials to which Defendant Damien Taylor had exclusive authorized access as Plaintiff's web developer.

42.     Like the Infringing Website, the Copycat Websites have a focus on global sales and fulfillment, seeking customers around the world.

43.     On the same day (February 17, 2026), Defendant Taylor sent Plaintiff a text message informing Plaintiff that he fixed the fact that the product pages on Plaintiff's website were hidden. . As stated above, Defendant Taylor was the only other person with access to WooCommerce.

44.     In connection with the Copycat Websites, Defendants or parties acting in concert with them operate a WhatsApp Business account at +1 (228) 331-1811 under the name "Bulk Peptide Supply," using Plaintiff's BULK PEPTIDE SUPPLY Mark as the account's profile image.

Through this account, Plaintiff's customers are contacted, Plaintiff is impersonated, and an advance-fee fraud scheme is carried out: customers who wire money for orders are told there has been a "system error" and are then presented with purported "insurance" options costing between $1,599 and $3,900 to "release" shipments that do not exist.

45.    At least one example of actual confusion and attempted fraud has been identified: Tina Diakos, New Jersey, was directed to wire funds to Defendants believing she was transacting with Plaintiff. She was also told to buy purported insurance to guarantee delivery of his order in an advance-fee fraud scheme targeting Plaintiff's customers.

46.    Defendants also operate, or cause to be operated, TikTok accounts under the handles "peppersupplier" and "peptidessupply0," one of which is branded as "Bulk Peptide Supply," an Instagram account under the handle "BulkPepSupply," and a Telegram account, using Plaintiff's Mark and BULK PEPTIDE SUPPLY Mark without authorization and in furtherance of the impersonation scheme.

47.    The products featured on the Copycat Websites use the identical naming convention used by Mr. Taylor for the product images on Plaintiff's website, as well as the same product names, blends, and quantities.

48.    On March 21, 2026, Plaintiff confronted Mr. Taylor by text and accused him of being behind the <bulkpeptidessupply.store> domain. He has not responded to the text.

49.    As a direct and proximate result of Defendants' conduct, Plaintiff has suffered lost revenues of approximately $170,000, representing harm attributable to schemes involving the Infringing Domain and the .Store Domains. Plaintiff continues to suffer ongoing and irreparable harm from the active infringement and fraud schemes targeting its customers and destroying its reputation.

11

## CLAIMS FOR RELIEF

### COUNT I

### Federal Trademark Infringement and Unfair Competition
### (15 U.S.C. § 1125(a) — False Designation of Origin)

50.     Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

51.     Plaintiff owns valid and enforceable common law trademark rights in the BULK PEPTIDE SUPPLY composite mark, comprising both the word elements BULK PEPTIDE SUPPLY and the BPS Logo. The BULK PEPTIDE SUPPLY Mark is inherently distinctive as a design mark. Plaintiff has used the Mark continuously in commerce since at least August 2024 in connection with the sale of research peptides and laboratory chemicals. Through millions of dollars in revenue, thousands of customer transactions, substantial marketing investment, and exclusive market use, the Mark—including its design elements—has accrued significant goodwill as a source identifier for research peptides and laboratory chemicals.

52.     Defendants incorporated Plaintiff's Mark in the .Store Domains. The Copycat Websites reproduce Plaintiff's exact BULK PEPTIDE SUPPLY Mark, branding, and product imagery, and also lists Plaintiff's address in Oklahoma, while also containing fraudulent email addresses, info@bulkpeptidessupply.store and info@bulkpeptide-supply.store.

53.     The Infringing Website uses confusingly similar presentation, color scheme, and trade dress. Defendants' use of a confusingly similar trademark in connection with the sale of the same category of goods, constitutes a false designation of origin, false or misleading description of fact, or false or misleading representation of fact that is likely to cause confusion, to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with Plaintiff, or as to the origin, sponsorship, or approval of Defendants' goods or services by Plaintiff, in violation of 15 U.S.C. § 1125(a).

54.    With respect to the Copycat Websites, the copying is exacting.  Defendants reproduced Plaintiff's BULK PEPTIDE SUPPLY Mark verbatim, without any alteration, using materials to which Damien Taylor had exclusive authorized access as Plaintiff's web developer. This constitutes wholesale reproduction of both the word and design elements of Plaintiff's Mark. The Copycat Websites also purport to offer the same products and blends for sale in the same quantities, with the same product names and naming conventions and the same color scheme.

55.    Defendants' infringement is willful. Defendants O2 Media and Damien Taylor had actual knowledge of Plaintiff's Mark from their prior role as Plaintiff's own web developer, with intimate firsthand knowledge of Plaintiff's business, its competitive position, and its customer base. Hunter Gregory had actual knowledge of Plaintiff's Mark because Damien Taylor personally introduced him to Plaintiff's business before building the Infringing Website at his direction and in concert with him.

56.    Notwithstanding each Defendant's actual knowledge of Plaintiff's Mark, Defendants registered the Infringing Domain and .Store Domains and launched directly competing and fraudulent operations.

57.    As a direct and proximate result of Defendants' willful infringement, Plaintiff has suffered and continues to suffer substantial and irreparable harm, as well as lost sales, lost customers, harm to its reputation and harm to its goodwill. Plaintiff has no adequate remedy at law.

58.    Plaintiff is entitled to injunctive relief pursuant to 15 U.S.C. § 1116, an award of Defendants' profits, Plaintiff's actual damages, enhanced damages for willful infringement, costs, and attorneys' fees pursuant to 15 U.S.C. § 1117.

13

## COUNT II
### Violation of the South Carolina Unfair Trade Practices Act
### (S.C. Code Ann. § 39-5-10 et seq.)

59.     Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

60.     The South Carolina Unfair Trade Practices Act ("SCUTPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." S.C. Code Ann. § 39-5-20(a).

61.     Defendants' conduct—including the registration of domain names confusingly similar to Plaintiff's Mark, the operation of a competing business designed to trade on Plaintiff's goodwill, the operation of a full impersonation scheme using Plaintiff's exact BULK PEPTIDE SUPPLY Mark and branding, the perpetration of an advance-fee fraud scheme targeting Plaintiff's customers, and the use of confusingly similar trade dress and branding across multiple platforms—constitutes unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce within the meaning of S.C. Code Ann. § 39-5-20(a).

62.     Defendants posted a fake Trust Pilot business rating of 4.9 stars with 374 reviews on the Infringing Website, as a further deception of the public, and listed Plaintiff's address on the Copycat Websites in a further effort to deceive consumers.

63.     Defendants' deception is particularly harmful, given that it is marketing unapproved peptide compounds of unknown origin directly to consumers.  It also tarnishes Plaintiff's reputation, as a company that sells almost entirely to labs, clinics, and medical practitioners.

64.     Defendants' conduct has an impact upon the public interest because it is deceptive to consumers. Defendant's conduct is likely to deceive consumers into believing that Defendants'

14

competing business and products are affiliated with, sponsored by, or approved by Plaintiff, when they are not. Moreover, Defendants seek to directly deceive consumers via its advance-fee fraud scheme targeting Plaintiff's customers—tricking them into spending money on "insurance" and products that will never arrive, and destroying Plaintiff's reputation and goodwill in the process. The deceptive conduct affects the public broadly, as it operates through the Internet to mislead consumers searching for Plaintiff's established business.

65.     Defendants are also using the Copycat Websites to impersonate Plaintiffs and defraud customers via various schemes.

66.     As a direct and proximate result of Defendants' violations of SCUTPA, Plaintiff has suffered actual damages, including lost sales and revenue, harm to its business reputation and goodwill, and harm to its competitive position in the market.

67.     Defendants' violations of SCUTPA were willful and knowing within the meaning of S.C. Code Ann. § 39-5-140(a), entitling Plaintiff to treble damages.

68.     Indeed, after Plaintiff succeeded in having the BulkPeptidesSupply.store Website taken down, Defendants promptly re-launched the Copycat Website on a new domain name—<bulkpeptide-supply.store>.

69.     Pursuant to S.C. Code Ann. § 39-5-140(a), Plaintiff is entitled to recover actual damages, trebled for willful violations, together with reasonable attorneys' fees and costs.

**COUNT III**
**Common Law Unfair Competition**

70.     Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

71.     Plaintiff has common law rights in the BULK PEPTIDE SUPPLY Mark, as Plaintiff's Mark is inherently distinctive. Further, through continuous and exclusive use in

commerce since at least August 2024, the BULK PEPTIDE SUPPLY Mark has accrued additional goodwill through millions of dollars in sales, thousands of customer transactions, substantial marketing investment, and exclusive use in the research peptide market.

72.     Defendants' conduct—including the registration and use of the Infringing Domain <bulkpeptidesglobal.com>, the operation of a competing business under the confusingly similar name "Bulk Peptides Global," the use of confusingly similar trade dress and branding, the use of fraudulent Trust Pilot ratings, the advance-fee fraud scheme targeting Plaintiff's customers, and the registration and use of the <bulkpeptidessupply.store> and <bulkpeptide-supply.store> domains to impersonate Plaintiff and defraud Plaintiff's customers—constitutes unfair competition under the common law of South Carolina.

73.     Defendants have misappropriated the goodwill Plaintiff has built in the BULK PEPTIDE SUPPLY Mark by deliberately adopting confusingly similar and identical names, marks, and domain names, with full knowledge of Plaintiff's established business, for the purpose of trading on Plaintiff's reputation and diverting Plaintiff's customers.

74.     Defendants' unfair competition is willful and deliberate. Defendant Damien Taylor personally knew Plaintiff's business and Mark from his prior role as Plaintiff's web developer, personally introduced Hunter Gregory to Plaintiff's business, and then built a directly competing website with Hunter Gregory while simultaneously continuing to serve as Plaintiff's web developer. Hunter Gregory had actual knowledge of Plaintiff's Mark because Damien Taylor personally introduced him to Plaintiff's business before Hunter Gregory directed Damien Taylor to build the Infringing Website.

75.     This conduct—a trusted web developer leveraging his client's confidential business knowledge, branding assets, and system access to build a competing operation and facilitate a fraud

16

scheme for a third party he himself recruited—reflects intentional, bad faith misappropriation of Plaintiff's commercial identity.

76.    As a direct and proximate result of Defendants' common law unfair competition, Plaintiff has suffered and continues to suffer immediate and irreparable harm, as well as loss of customers, diversion of sales, erosion of its Mark's goodwill, and harm to its competitive position in the research peptide market. Monetary damages are inadequate to compensate Plaintiff for this ongoing harm because the damage to Plaintiff's goodwill, reputation, and customer relationships cannot be fully quantified. Plaintiff has no adequate remedy at law.

77.    Plaintiff is entitled to a temporary restraining order and preliminary and permanent injunction under South Carolina common law to immediately halt Defendants' ongoing unfair competition.

78.    Absent immediate injunctive relief, Defendants will continue to operate the Infringing Domain, Infringing Website, .Store Domains and Copycat Websites, divert Plaintiff's customers, perpetrate the advance-fee fraud scheme against Plaintiff's customers, and irreparably damage Plaintiff's goodwill and Mark.

79.    Indeed, as stated above, after Plaintiff filed a successful DMCA takedown notice, Defendants registered a new copycat domain name and re-launched their scam site. Even if Defendants deny involvement in the Copycat Websites, those sites, as well as the social media accounts and WhatsApp number must be disabled in order to prevent further irreparable injury to Plaintiff or the consuming public.

80.    The balance of hardships strongly favors Plaintiff. Defendants have no legitimate interest in operating a business built on deliberate misappropriation of Plaintiff's identity, while Plaintiff faces ongoing irreparable harm with each day the Infringing Website, Copycat Websites,

17

Instagram account and videos, WhatsApp phone number, and Tik Tok account @peptidessupply0 and videos remain operational.

81.    Plaintiff is entitled to a temporary restraining order, preliminary injunction, and permanent injunction enjoining Defendants' common law unfair competition, together with such other equitable relief as the Court deems just and proper.

## PRAYER FOR RELIEF

82.    WHEREFORE, Plaintiff Bulk Peptide Supply LLC respectfully requests that this Court enter judgment in its favor and against Defendants, jointly and severally, as follows:

83. A preliminary and permanent injunction enjoining Defendants, and their officers, agents, employees, and all persons acting in concert with them, from: (i) using the BULK PEPTIDE SUPPLY Mark,  or any mark or design confusingly similar thereto; (ii) operating, maintaining, or using the domain names <bulkpeptidesglobal.com>, <bulkpeptidessupply.store>, <bulkpeptide-supply.store> or any domain name confusingly similar to Plaintiff's Mark; (iii) operating the WhatsApp Business account at +1 (228) 331-1811 or any account impersonating Plaintiff; (iv) operating the TikTok accounts "peppersupplier" and "peptidessupply0,"  the Instagram account "BulkPepSupply," the Telegram account, or any social media account using Plaintiff's Mark or BULK PEPTIDE SUPPLY Mark without authorization; and (v) engaging in any other acts likely to cause confusion or to deceive consumers as to the source, origin, affiliation, or sponsorship of Defendants' goods or services;

84. A temporary restraining order pursuant to Count III (Common Law Unfair Competition) and Federal Rule of Civil Procedure 65, immediately: (i) enjoining Defendants from operating, maintaining, advertising, or deriving any commercial benefit from the Infringing Website at <bulkpeptidesglobal.com> or the Copycat Websites at <bulkpeptidessupply.store> and <bulkpeptide-supply.store>; (ii) directing the immediate takedown of the Copycat Websites  (to the extent they are

18

still up); (iii) directing the immediate suspension or removal of the WhatsApp Business account at +1 (228) 331-1811, the TikTok accounts "peppersupplier" and "peptidessupply0," and the Instagram account "BulkPepSupply," and the Telegram impersonation account; (iv) directing Defendants to preserve all customer data, financial records, and communications relating to the Infringing Domain and .Store Domains; and (v) freezing all revenues and proceeds derived from the fraud scheme pending a hearing on Plaintiff's motion for preliminary injunction;

85. An award of Defendants' profits derived from their infringing activities, pursuant to 15 U.S.C. § 1117(a);

86. An award of Plaintiff's actual damages suffered as a result of Defendants' infringement and unfair competition, pursuant to 15 U.S.C. § 1117(a);

87. Enhanced damages for willful infringement pursuant to 15 U.S.C. § 1117(a);

88. Treble damages pursuant to S.C. Code Ann. § 39-5-140(a) for Defendants' willful violations of the South Carolina Unfair Trade Practices Act;

89. Attorneys' fees and costs of this action pursuant to 15 U.S.C. § 1117(a) and S.C. Code Ann. § 39-5-140(a);

90. Pre- and post-judgment interest at the maximum rate permitted by law; and

91. Such other and further relief as this Court deems just and proper.

19

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff Bulk Peptide Supply LLC

hereby demands a trial by jury on all issues so triable.

Dated: April 1, 2026
Charleston, South Carolina                    Respectfully submitted,


**GORDON REES SCULLY MANSUKHANI LLP**

By: /s/ *Peter G. Siachos*
Peter G. Siachos, Fed. ID 07591
Email: psiachos@grsm.com
Tel: (843) 714-2505
Delaney M. Tyson, Fed. ID 14432
Email: dtyson@grsm.com
Tel: (843) 714-2505
677 King Street, Suite 450
Charleston, SC 29403

*Attorneys for Plaintiff Bulk Peptide Supply LLC*